# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **(1) AUSTIN TAYLOR BURKE,** | ) |
| **Petitioner,** | ) |
| | ) |
| **-vs-** | ) |
| | ) |
| **(1) ED SHELDON, WARDEN,** | ) |
| **Respondent.** | ) |

---

## PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. § 2254
### AND BRIEF IN SUPPORT

---

Submitted by,

**DEBRA K. HAMPTON, OBA # 13621**
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Tel:     (405) 250-0966
Fax:     (866) 251-4898
Email: hamptonlaw@cox.net
Attorney for Petitioner

**CORPORATE DISCLOSURE STATEMENT
<u>PURSUANT TO L.R. RULE 3.13</u>**

There is no nongovernmental corporate party involved in this case.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

CASES ........................................................................................................... iv

STATUTES..................................................................................................... vii

UNITED STATES CODE ............................................................................... vii

OTHER AUTHORITIES................................................................................. viii

RULES ......................................................................................................... viii

I.     JURISDICTION ....................................................................................... 1

II.    PRIOR PROCEEDINGS ........................................................................ 1

III.   FURTHER PROCEEDINGS.................................................................... 3

IV.   TIMELINESS OF PETITION ................................................................. 3

V.     EXHAUSTION OF CLAIMS.................................................................. 4

VI.   STANDARD OF REVIEW ...................................................................... 4

VII.  STATEMENT OF THE FACTS ............................................................. 5

VIII. GROUNDS: ......................................................................................... 10

      I.     THE STATE COURT'S RESOLUTION OF THE ILLEGALLY SEIZED INFORMATION OF CELL TOWER DATA WAS OBJECTIVELY UNREASONABLE IN LIGHT OF *CARPENTER V. U.S.,* 585 U.S. ___, 138 S.CT. 2206 (2018) AND PREVIOUS DECISIONS FROM THE UNITED STATES SUPREME COURT. .............................................................................. 10

      II.    THE TRIAL COURT ERRED IN HEARING A SEPARATE UNRELATED ROBBERY WITH PETITIONER'S MURDER CHARGE WHICH WAS UNDULY PREJUDICIAL AND THE STATE COURT'S RESOLUTION OF THE CLAIM WAS OBJECTIVELY UNREASONABLE UNDER 28 U.S.C. §, § 2254(D) (1-2) ............................................................................ 13

      III.   THE JURY RETURNED A VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE IS INSUFFICIENT TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.............................................. 15

ii

IV.    TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS FOR FAILING TO INVESTIGATE AND/OR THE EVIDENCE WAS UNAVAILABLE. ................................................................................ 17

V.    PROSECUTORIAL MISCONDUCT FOR FAILING TO CORRECT TESTIMONY IT WOULD HAVE REASON TO BELIEVE WAS FALSE. .................................................................... 27

VI.    PETITIONER WAS DEPRIVED OF HIS RIGHT TO CONFRONT WITNESSES AS THE AFFIDAVITS SET FORTH MATERIAL FACTS AND DEMONSTRATE A DENIAL OF FUNDAMENTAL FAIRNESS. .......................................................... 28

VII.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO JUROR MISCONDUCT. ............................................... 28

IX.    CONCLUSION ............................................................................ 29

# TABLE OF AUTHORITIES

## CASES

*Alverson v. Workman*, 595 F.3d 1142, 1155 (10th Cir. 2010) ........................................................ 5

*Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) ........................................................ 14

*Berger v. U.S.,* 295 U.S. 78, 88 (1935) ........................................................ 27

*Brady v. Maryland*, 373 U.S 83, 88 (1963) ........................................................ 27

*Brumfield v. Cain,* 576 U.S. 305 (2015) ........................................................ 20

*Bruton v. U.S.,* 391 U.S. 123, 135 (1968) ........................................................ 15

*Carpenter v. U.S.,* 585 U.S. ___, 138 S.Ct. 2206 (2018) ........................................................ 10, 11, 12

*Carroll v. U.S.*, 267 U.S. 132, 149 (1925) ........................................................ 11

*Case v. Hatch,* 731 F.3d 1015, 1036 (10th Cir. 2013) ........................................................ 26

*Chapman v. California,* 386 U.S. 18, 24 (1967) ........................................................ 15

*Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) ........................................................ 26

*Crawford v. Washington*, 541 U.S. 36, 51 (2004) ........................................................ 28

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ........................................................ 20

*Darr v. Burford*, 339 U.S. 200, 203 (1950) ........................................................ 4

*Davis v. Burke*, 179 U.S. 399, 401-403 (1900) ........................................................ 4

*Day v. McDonough*, 547 U.S. 198, 205, 213 (2006) ........................................................ 3

*Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986) ........................................................ 15

*Desist v. U.S.*, 394 U.S. 244, 258-259 (1969) ........................................................ 13

*Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974) ........................................................ 27

*Early v. Packer*, 537 U.S. 3, 8, (2002) ........................................................ 4

*Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012) ........................................................ 20

*Fontenot v. Crow*, No. 19-7045 (10th Cir. July 13, 2021) ........................................................ 26

*Giglio v. U.S.*, 405 U.S. 150, 154 (1972) ........................................................ 27

iv

*Griffith v. Kentucky*, 479 U.S. 314 (1987) .................................................................. 13

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006) ........................................ 5

*Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) ................................................. 5

*Herrera v. Collins*, 506 U.S. 390, 404 (1993) ........................................................... 24

*Holland v. Florida*, 560 U.S. 631 (2010) .................................................................... 3

*Hopt v. Utah,* 120 U.S. 430, 438 (1887) .................................................................... 15

*House v. Bell,* 547 U.S. 518 (2006) ............................................................................ 25

*Hurles v. Ryan,* 752 F.3d 768, 790-91 (9th Cir. 2014) .............................................. 20

*Idaho v. Wright*, 497 U.S. 805 (1990) ........................................................................ 28

*Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979) ........................................... 5, 15, 16

*Katz v. U.S.*, 389 U.S. 347, 351 (2014) ...................................................................... 11

*Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012) ............... 20

*Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) ......................................................... 26

*Kyllo v. U.S.,* 533 U.S. 27 (2001) ......................................................................... 11, 12

*Lutwak v. U.S.,* 344 U.S. 604, 619 (1953) .................................................................. 15

*McCleskey v. Zant*, 499 U.S. 467, 502 (1991) ....................................................... 24, 26

*McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) .................................................. 24, 25

*Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ............................................ 5

*Michel v. Louisiana*, 350 U.S. 91, 101 (1955) ............................................................ 28

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) .......................................................... 5

*Napue v. Illinois*, 360 U.S. 264, 269 (1959) .............................................................. 27

*Neder v U.S.*, 527 U.S. 1, 8 (1999) ............................................................................ 29

*Northrop v. ril*, 265 F.3d 372, 377 (6th Cir. 2001) .................................................... 19

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) ..................................................... 20

*Peters v. Kiff,* 407 U.S. 493, 502 (1972) ................................................................... 29

*Picard v. Connor*, 404 U.S. 270, 278 (1971) ............................................................ 4

*Pointer v. Texas*, 380 U.S. 400, 403 (1965) ............................................................. 28

*Riley v. California,* 573 U.S. 373, 402-403 (2014) ..................................................... 12

*Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995) ................................................... 29

*Robinson v. Howes*, 663 F.3d 819, 823 n.2 (6th Cir. 2011) ...................................... 20

*Rose v. Clark*, 478 U.S. 570, 577-578 (1986) ........................................................... 15

*Sanders v. U.S.,* 373 U.S. 1, 15-17 (1963) ................................................................ 26

*Sawyer v. Smith*, 497 U.S. 227, 242 (1990) .............................................................. 28

*Schlup v. Delo,* 513 U.S. 298, 321 (1995) ...................................................... 24, 25, 26

*Smith v. Maryland,* 442 U.S. 735, 740 (1979) ........................................................... 11

*Smith v. Phillips*, 455 U.S. 209, 221-222 (1982) ....................................................... 29

*State v. Burke,* 162 Ohio St. 3d 1431 (2021) ............................................................ 18

*State v. Coley*, 93 Ohio St.3d 253 (2001) ................................................................. 14

*State v. Martin*, 20 Ohio App.3d 172, 175 (Ct. App. 1983) ...................................... 16

*State v. Roberts*, 62 Ohio St.2d 170, 175 (1980) ..................................................... 14

*State v. Robinson*, 162 Ohio St. 486 (1955) ............................................................. 16

*State v. Sorgee*, 54 Ohio St. 2d 464 (1978) .............................................................. 16

*State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997) ................................................. 15

*State v. Torres*, 66 Ohio St.2d 340, 343-344 (1981) ................................................ 14

*Stermer v. Warren,* 959 F.3d 704, 719 (6th Cir. 2020) .......................................... 5, 19

*Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018)
    *aff'd,* 959 F.3d 704 (6th Cir. 2020) .................................................................... 5

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................................... 28

*Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir. 2004) ............................................ 20

*Tibbs v. Florida*, 457 U.S. 31, 42 (1982) ............................................................. 15, 16

*U.S. v. Atkinson*, 297 U.S. 157, 160 (1936) ........................................................ 15, 27

*U.S. v. Catena*, 500 F.2d 1319 (3d Cir.1974) ............................................................ 14

*U.S. v. Jones,* 565 U.S. 400 (2012) ............................................................................ 11

*United States ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966).................... 4

*U.S. v. Miller*, 425 U.S. 435 (1976) ............................................................................ 11

*U.S. v. Olano*, 507 U.S. 725, 736 (1993) ............................................................. 15, 27

*U.S. v. Ragghianti,* 527 F.2d 586 (9th Cir.1975) ....................................................... 14

*Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) ..................................... 27

*Weaver v. Massachusetts*, 582 U.S.___, 137 S.Ct. 1899 (2017) ................................ 29

*Whorton v. Bockting*, 549 U.S. 406 (2007)................................................................. 28

*Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ........................................................ 29

*Williams v. Taylor*, 529 U.S. 362, 412 (2000) ............................................................ 4

## STATUTES

R.C. 2903.01(B) & (F)................................................................................................. 1

R.C. 2911.01(A)(1) & (C)........................................................................................ 1, 2

R.C. 2921.12(A)(1 )& (B).......................................................................................... 1

R.C. 2923.13(A)(2) & (B)......................................................................................... 2

R.C. 2941.145 ...................................................................................................... 1, 2, 17

## UNITED STATES CODE

28 U.S.C. § 2244(d) ................................................................................................... 3

28 U.S.C. § 2254(d) ........................................................................................... passim

28 U.S.C. § 2254 (e) ................................................................................................. 18

**OTHER AUTHORITIES**

9 J. Wigmore, Evidence § 2497 (3d ed. 1940) ................................................................. 16

C. McCormick, Evidence § 321, pp. 681-682 (1954) ...................................................... 16

**RULES**

Ohio Evid. R. 404(B) ........................................................................................................ 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **(1) AUSTIN TAYLOR BURKE,** | ) |
| **Petitioner,** | ) |
| | ) |
| **-vs-** | ) |
| | ) |
| **(1) ED SHELDON, WARDEN,** | ) |
| **Respondent.** | ) |

**PETITION FOR WRIT OF HABEAS CORPUS AND BRIEF IN SUPPORT**
**BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. § 2254**

COMES NOW, the Petitioner, AUSTIN TAYLOR BURKE, #A743072, through his attorney Debra K. Hampton, in custody of the Ohio Department of Corrections, incarcerated at the Southern Ohio Correctional Facility, Lucasville, Ohio. The Petitioner seeks the issuance of the writ of Habeas Corpus under 28 U.S.C. § 2254. In support thereof, Petitioner states:

**I.    JURISDICTION**

The action does not involve diversity jurisdiction.

**II.    PRIOR PROCEEDINGS**

**ORIGINAL CONVICTION**

| | |
|---|---|
| **Court:** | Trumbull County. |
| **Case Number:** | Nos. 2017 CR 403 |
| **Date of sentence:** | March 27, 2018 |
| **Presiding Judge:** | Honorable Andrew D. Logan |

**Offenses** and **terms of sentence:**

Count 1: Aggravated Murder, an unclassified felony with a firearm specification, in violation of R.C. 2903.01(B) & (F) and R.C. 2941.145;

Count 2: Aggravated Robbery, a first-degree felony with a firearm specification, in violation of R.C. 2911.01(A)(1) & (C) and R.C. 2941.145;

Count 3: Tampering with Evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1 )& (B);

1

Count 4: Having Weapons while under Disability, a third-degree felony, in violation of R.C. 2923.13(A)(2) & (B);

Count 5: Having Weapons while under Disability, a third-degree felony, in violation of R.C. 2923.13(A)(2) & (B); and

Count 6: Aggravated Robbery, a first-degree felony with a firearm specification, in violation of R.C. 2911.01(A)(1) & (C) and R.C. 2941.145.

**Terms of sentence:**

Count 1: life imprisonment with parole eligibility after 30 years, plus 3 years mandatory on the firearm specification, to run prior to and consecutive, for a total of 33 years; Count 2: 11 years, concurrent to Count 1, with the firearm specification merged; Counts 3, 4, and 5: 36 months each, concurrent to each other and concurrent to the other counts; Count 6: 11 years, plus 3 years mandatory on the firearm specification, to run prior to and consecutive, for a total of 14 years. Count 6 was ordered to run consecutive to Counts 1-5. A nunc pro tunc entry was issued to clarify for the Ohio Department of Rehabilitation and Correction that Petitioner's total imprisonment term is 47 years before eligibility for parole.

**Trial:**      A jury trial was held March 5-9, 2018, the jury found Petitioner guilty on all counts.

**Counsel:**      Brad Olsen and Edward Hartwig

## DIRECT APPEAL

**Court:**      Court of Appeals of Ohio, Eleventh District, Trumbull County.
**Case No:**      Nos. 2018-T-0032, 2018-T-0035.
**Opinion:**      May 20, 2019. Affirmed; remanded.
**Counsel:**      Rhys B. Cartwright-Jones

## PROPOSITIONS ON APPEAL:

I.      The Trial Court erred in taking evidence of cell tower location data that the state searched and seized without a warrant.

II.      The Trial Court erred in hearing a separate unrelated robbery with Burke's murder charge.

III.    The jury returned a verdict against the manifest weight of the evidence.

IV.    The combined effect of any two or more errors above renders the cause reversible under the cumulative error doctrine.

V.    The Trial Court erred in sentencing Burke to maximum consecutive terms of imprisonment as to his weapon-in-detention conviction.

## III.    FURTHER PROCEEDINGS

### STATE POST-CONVICTION RELIEF AND MOTION FOR NEW TRIAL

**Court:**              Trumbull County
**Case Number:**        No. 2017 CR 00403
**Date filed:**         May 16, 2019
**Opinion:**            February 27, 2020
**Counsel:**            Rhys B. Cartwright-Jones

### STATE POST-CONVICTION APPEAL

**Court:**              Ohio: Court of Appeals, 11th Appellate Dist.
**Case No:**            2020-T-0013
**Opinion:**            November 30, 2020.
**Counsel:**            Megan M. Patituce & Kimberly Corral

### OHIO SUPREME COURT

**Court:**              Supreme Court of Ohio
**Case No:**            2021-0062
**Opinion:**            April 16, 2021

The Ohio Supreme Court rejected the appeal with (2) two judges dissenting. (Donnelly, J., dissents, with an opinion joined by Brunner, J.)

## IV.    TIMELINESS OF PETITION

The Petitioner asserts this petition is timely under 28 U.S.C. § 2244(d), the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). However, the AEDPA's "statute of limitations defense…. is not 'jurisdictional,'" *Holland v. Florida*, 560 U.S. 631 (2010) (citing *Day v. McDonough*, 547 U.S. 198, 205, 213 (2006)).

3

## V.  EXHAUSTION OF CLAIMS

The Petitioner's claims in this petition are exhausted as the state court has had the first opportunity to hear the claim sought to be vindicated in this federal habeas proceeding. The Federal Court has required a state prisoner to present the state courts with the same claim he urges upon the Federal Courts. See *Darr v. Burford*, 339 U.S. 200, 203 (1950); *Davis v. Burke*, 179 U.S. 399, 401-403 (1900). Sometimes, "the ultimate question for disposition," *United States ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966), "will be the same despite variations in the legal theory or factual allegations urged in its support." *Picard v. Connor*, 404 U.S. 270, 278 (1971).

## VI.  STANDARD OF REVIEW

Federal habeas relief may not be granted for claims subject to 28 U.S.C. § 2254(d) unless it is shown that the state court's decision "was contrary to" federal law then clearly established by the Supreme Court, or it "involved an unreasonable application of" such law, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Petitioner argues that analyzing the OCCA's decision demonstrates that the decision is ***"contrary to"*** clearly established precedents as the state court ***"applies a rule that contradicts the governing law set forth in our cases"*** and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, *supra*, at 405-406; (quoting *Early v. Packer*, 537 U.S. 3, 8, (2002)). The court held that avoiding these "pitfalls ***does not*** require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

4

correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (citing *Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979)).

Even under the AEDPA's deferential standard, a Federal Court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006). "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) *aff'd,* 959 F.3d 704 (6th Cir. 2020); *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). The OCCA's determination under a timely AEDPA analysis involves an unreasonable determination of Supreme Court precedents because the state court's determination rests partly on thin air. This court should conclude the writ should issue. The Sixth Circuit has held that under 28 U.S.C. § 2254, review is limited to examining whether the highest state court's resolution of a particular claim is contrary to, or an unreasonable application of, clearly established federal law. *See Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020); *See also Alverson v. Workman*, 595 F.3d 1142, 1155 (10th Cir. 2010) Supreme Court precedent directs us, in deciding how to resolve a federal claim raised by a state habeas petitioner, to focus on the last state court decision disposing of that federal claim.

## VII.    STATEMENT OF THE FACTS

On Direct Appeal, this case involved three matters, a homicide, an unrelated robbery, and an unrelated matter of a weapon in a detention facility. In the instant habeas action, this case only addresses the homicide case which involved the June 15, 2017, discovery of Kenneth Brandon Hayes Sample ("Decedent"). The robbery of Pizza Joe's restaurant was an unrelated incident that

5

occurred on June 20, 2017. The weapons-in-detention involved Petitioner having a weapon while awaiting trial on the foregoing charges in the Trumbull County Jail, which is a violent place.

The homicide and the Pizza Joe's matter were heard by the grand jury and billed them in one indictment as alleged in Case No. 2017 CR 00403. The grand jury returned charges of Aggravated Murder under R.C. 2903.01, Aggravated Robbery under R.G. 2911.01, Tampering with Evidence under R.C. 2921.12, and Weapons under Disability under R.C. 2921.12. Petitioner was tried and convicted on all counts and sentenced to a total term of imprisonment of 47 years before eligibility for parole.

Turning to the substantive facts, the conviction rests on three categories of evidence. The first category a handful of what the defense aptly called "teenage" witnesses. [Tr. at 188] The second category is inconclusive forensic evidence. The third category is a warrantless search of cell tower location data.

The adolescent witnesses recount a get-together at a Mason St. residence, and variously testify to whether or not Petitioner (a) had a firearm then, if ever, and (b) discussed a homicide then, if ever. The recollections all differ on these two points, with witnesses even giving multiple versions of events to the police and to the jury.

The testimony of Josh White, 21 at the time of the incident admitted that he was with Decedent in the late hours of June 11, 2017. [Tr. at 196-205.] White testified that Sample told him, he was going to hang out with Petitioner and that Petitioner would give him 1,000.00 USD. [Tr. at 203] White purportedly never to have met Petitioner—despite Petitioner having completely described White. When the police interviewed White, he had a cut on his hand. [Tr. at 206] He had markings on his knuckles he claimed were from punching a bed post. *Id.* He had muddy shorts that were in Sample's vehicle, that were never examined by police. *Id.* White

6

testified that Sample never did and never would do heroin. [Tr. at 203] [*c.f.* Tr. at 260, Sample snorted heroin and fentanyl].

Brittani Mertin testified that she knew Petitioner through a Ricky Roupe. [Tr. at 233] She stated that she was familiar with a .22 firearm. [Tr. at 236] Mertin testified she had an adolescent fling with Petitioner but that they never had sexual intercourse. [Tr. at 238] She testified Petitioner inquired by text about a 9 mm handgun magazine, and that neither she nor anyone else could find it. [Tr. at 247] Petitioner never mentioned Sample to her or anything that would indicate homicide. [Tr. at 248-2499]

Meredith Loges, age 18 at the time of her testimony, testified to attending church with and dating Petitioner. [Tr. at 220–230] She testified to seeing Petitioner rarely with a marbled .22 handgun. She could not testify to periods of time. [Tr. at 229] Petitioner never said to her a disparaging word about Sample. [Tr. at 232]

Nathan Moats, age 16, testified that Petitioner related shooting Sample but that he knew no details of the alleged incident. [Tr. at 255] Moats had discussed the homicide at that point with his friends and seen news coverage of it. [Tr. at 265] Moats claimed Petitioner buried the body even though the body was not buried. [Tr. at 266] Thus, Moats' testimony was not corroborated by evidence or the record.

Ricky Roupe, age 15 at the time of testimony, stated that he grew up with Petitioner and that on June 11-12, Petitioner, himself, and several others were at his grandmother's home on Mason St. [Tr. at 271, 81] He went to bed, slept until the morning, and Petitioner woke him up at 9 a.m. "to get his (Petitioner's) clothes and stuff." *Id.* Roupe stated Petitioner told him nothing else. [Tr. at 272] Thereafter, according to Roupe, "Well, I seen everything on Facebook about Brandon Sample's murder and then I seen that Austin-that he was getting blamed for it. So, I

asked him if it was true, and he told me yes. And then he told me how he did it and everything." *Id.*

The police interviewed Roupe twice, June 16 and June 23. [Tr. at 278–79] Roupe admitted on cross-examination he lied in the first interview. [Tr. at 279] At that interview, he said nothing about Petitioner telling him anything. *Id.* He told the police that Petitioner came to Roupe's grandmother's house around 3:PM, by himself, without a gun, that Roupe, went to bed at 11:PM, and that Petitioner was there the entire evening. [Tr. at 280]

Deider Keener, aged 19, testified that at the Mason St. house, she heard Petitioner talk about robbing someone-that he had plans to rob someone for heroin. [Tr. at 296, 302] She identified the unique .22, she said. [Th. at 298] But when the police interviewed her, Keener stated she had only seen Petitioner 6 times in her life, never in possession of a firearm, and mentioning nothing about Decedent, let alone robbing him, let alone killing him. [Tr. at 308-09]

Hayle Roupe, aged 17, testified to knowing Petitioner through her cousins. [Tr. at 398] Despite testifying to having seen Petitioner with a .22, recalling the meeting of several people at Mason St., and claiming to have heard Petitioner talk of a homicide, she never mentioned those details concerning Sample, and she vacillated on if/when/and whether Petitioner ever produced a firearm. [Tr. at 415-416]

The cellular evidence in this case was admitted into evidence without a warrant and over a defense Motion to Suppress. To provide some background on cellular site location data, any time a cell phone connects to a radio antenna or cell-site, it generates a time-stamped log, a CSLI, which wireless carriers collect and stores business records--and/or law enforcement depending on how one looks at it. [*Infra*] And a review of the transcript by word search shows the State referring to cellular towers in its opening statement [Tr. at 167 (lx), 168 (4x), 169 (4x),

8

170, (2x) 174(lx)] and at least 100 references in the transcripts. Cellular site location data mattered a lot to the State because it was confusing to the jury.

Looking at the forensic evidence as there is no dispute that Sample died, and no expert could provide the type, class, or caliber of weapon that killed him. [Tr. at 914] No one could provide a particular time or location of death. No piece of physical evidence tied Petitioner to the alleged offense. Even though DNA testing was done, there was no DNA evidence implicating Petitioner to any firearm. [Tr. at 534] Much of the physical evidence—potentially exculpatory— was no longer available with the internment of decedent's body. [Tr. at 713- 714]

Next, discussing the Pizza Joe's robbery, the police responded to a call about a masked robber at a Pizza Joe's wielding a small handgun [Tr. at 833], and they interviewed witnesses. Testimony came from Lea Smith, Donovan Bunner, Justin Borawiec, and Melanie Engel, all who testified to different versions of whether Petitioner displayed any behavior consistent with robbing Pizza Joe's.

Leah Smith, age 15 at the time of her testimony, testified that she, Petitioner, and others were swimming at Willow Lake. They went back to Mel's apartment and Mel's cat escaped. They left the apartment and went to look for the cat. The police arrived sometime shortly after. According to Smith, Petitioner came in with a lot of money. [Tr. at 740-46]

Donovan Bunner, age 17 at the time of his testimony, testified that he was swimming with Petitioner and others at Willow Lake. Bunner testified they went back to Mel's apartment that his cat escaped. [Tr. at 750] They went out to look for it. [Tr. at 752-753] The police arrived. [Tr. at 753] Petitioner allegedly gave a false name, Nathan. *Id.* Bunner, however, affirmed that Petitioner did not come "...back with a whole bunch of money and coun[t] it in front of [Bunner] and [Leah]." [Tr. at 757] (The testimony from Justin Borawiec was similar.)

Melanie Engel, age 20 at the time of her testimony, testified similarly, and added that she found cash in a box of hair dye and a firearm, inexplicably after the police left. [Tr. at 798, 813] She feigned no idea as to how it got there. This was the same fireman that the authorities tested for DNA because it was allegedly connected to the homicide, but the results were inconclusive. [Tr. at 534-535]

## VIII.  GROUNDS:

**I.        THE STATE COURT'S RESOLUTION OF THE ILLEGALLY SEIZED INFORMATION OF CELL TOWER DATA WAS OBJECTIVELY UNREASONABLE IN LIGHT OF *CARPENTER V. U.S.*, 585 U.S. ___, 138 S.CT. 2206 (2018) AND PREVIOUS DECISIONS FROM THE UNITED STATES SUPREME COURT.**

### ARGUMENT AND AUTHORITY

On December 28, 2017, Petitioner filed a "Motion to Suppress Cell-Site Data Information—Unlawful Seizure." Petitioner asserted the investigating officers violated his Fourth Amendment rights by seizing his cellular telephone records from AT&T and searching data called Historical Precision Location Information ("HPLI") without first obtaining a warrant. The State responded on January 3, 2018, arguing a warrant is not required to obtain HPLI because it is not a search protected by the Fourth Amendment. The State submitted the information was properly obtained from AT&T through a Grand Jury Subpoena.

The Trial Court held a hearing on January 8, 2018, during which it ordered the prosecution to provide defense counsel with a copy of the Grand Jury Subpoena used to obtain Petitioner's HPLI. On January 29, 2018, the Trial Court denied Petitioner's Motion. On June 22, 2018, after the Trial Court had issued its ruling on Petitioner's Motion to Suppress—after the data was presented to the jury and Petitioner had been convicted—the United States Supreme Court held that the Government's acquisition of these cell-site records is, in fact, a search

10

protected by the warrant requirement of the Fourth Amendment. *See Carpenter v. U.S.,* 585 U.S. ___, 138 S.Ct. 2206 (2018).

Petitioner argues the State's highest court made an objectively unreasonable determination of Supreme Court precedent when failed to apply clearly established principles based upon historic principles in Petitioner's Direct Appeal. In *Carpenter*, *supra,* SCOTUS held the Government's acquisition of Carpenter's cell-site records was a Fourth Amendment search. Petitioner's Fourteenth Amendment rights were violated because the Fourth Amendment protects not only property interests but certain expectations of privacy. *Katz v. U.S.*, 389 U.S. 347, 351 (2014). Thus, when an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is prepared to recognize as reasonable," official intrusion into that sphere qualifies as a search and requires a warrant supported by probable cause. *Smith v. Maryland,* 442 U.S. 735, 740 (1979). The analysis regarding which expectations of privacy may have protection is informed by historical understandings "of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted." *Carroll v. U.S.*, 267 U.S. 132, 149 (1925). These understandings of the Fourth Amendment apply to innovations in surveillance tools to protect what the framers intended. *Kyllo v. U.S.,* 533 U.S. 27 (2001). The Supreme Court held the digital data at issue—personal location information maintained by a third-party—does not fit neatly under existing precedents but lies at the intersection of two lines of cases. One set addresses a person's expectation of privacy in his physical location and movements. *U.S. v. Jones,* 565 U.S. 400 (2012) (five Justices concluding that privacy concerns would be raised by GPS tracking). The other addresses a person's expectation of privacy in information voluntarily turned over to third parties. *See U.S. v. Miller,* 425 U.S. 435 (1976) (no expectation of privacy in financial records held by a bank), and *Smith v. Maryland, supra*, (no expectation of privacy in

11

records of dialed telephone numbers conveyed to telephone company). *Carpenter, supra,* 138 S.Ct. at 2214-2216.

The reason the State Court decision was objectively unreasonable is because of what the court addressed in *Carpenter, supra.* Because tracking a person's past movements through CSLI partakes of many qualities of GPS monitoring considered in *Jones*—it is detailed, encyclopedic, and effortlessly compiled. However, the fact that the individual continuously reveals his location to his wireless carrier implicates the third-party principle of *Smith* and *Miller*. Given the unique nature of cell-site records, the Supreme Court declined to extend *Smith* and *Miller* to cover them. The majority of the court recognized that individuals reasonably expect privacy in the whole of their physical movements. Allowing Government access to cell-site records—which "hold for many Americans the 'privacies of life,'" *See Riley v. California,* 573 U.S. 373, 402-403 (2014)—contravenes that expectation. Historical cell-site records present even greater privacy concerns than the GPS monitoring considered in Jones: They give the Government near perfect surveillance and allow it to travel back in time to retrace a person's whereabouts, subject only to the five-year retention policies of most wireless carriers. The Government contends that CSLI data is less precise than GPS information, but it thought the data accurate enough here to highlight it during closing argument in Carpenter's trial. At any rate, the rule the court adopts "must take account of more sophisticated systems that are already in use or in development," *Kyllo*, *supra,* at. 36. The Government did not obtain a warrant supported by probable cause before acquiring Petitioner's cell-site records. It acquired those records under a subpoena which required no showing of probable cause and any evidence obtained as a result violated the Fourteenth Amendment which required the suppression of those records.

12

The Ohio Court of Appeals determined "the good-faith exception to the exclusionary rule applies to [Petitioner's] HPLI that was searched in violation of the Fourth Amendment. The trial court did not err in failing to suppress the evidence." In *Griffith v. Kentucky*, 479 U.S. 314 (1987), the court held that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Id.*, at 322. The Court gave two reasons for its decision stating, First, because we can only promulgate new rules in specific cases and cannot possibly decide all cases in which review is sought, "the integrity of judicial review" requires the application of the new rule to "all similar cases pending on direct review." *Id.*, at 323. Second, because "selective application of new rules violates the principle of treating similarly situated defendants the same," the court refused to continue to tolerate the inequity that resulted from not applying new rules retroactively to defendants whose cases had not yet become final. *Id.*, at 323-324 (citing *Desist v. U.S.*, 394 U.S. 244, 258-259 (1969) (Harlan, J., dissenting)).

II.     **THE TRIAL COURT ERRED IN HEARING A SEPARATE UNRELATED ROBBERY WITH PETITIONER'S MURDER CHARGE WHICH WAS UNDULY PREJUDICIAL AND THE STATE COURT'S RESOLUTION OF THE CLAIM WAS OBJECTIVELY UNREASONABLE UNDER 28 U.S.C. §, § 2254(D) (1-2)**

### ARGUMENT AND AUTHORITY

Petitioner argues the alleged offenses were unrelated being tried together created undue prejudice as it infected the trial with fundamental unfairness. It is notable that the prosecution admitted the multiple charges were confusing. According to the prosecutor's opening statement, "So I don't want to confuse you. But we've got the murder, the aggravated robbery, and the crimes related to the death of Brandon Sample. And then on June 20th, about eight days later, we have the robbery at Pizza Joe's." [Tr. at 178]

None of the evidence from either incident would have been admissible in the trial of the other. Both indictments involved robbery charges, which invited confusion and did not establish the prerequisites required for a joinder of offenses. Petitioner argues that he is innocent of both offenses. There is no eyewitness accounts that Petitioner committed either offense. Under state law a prosecutor can negate a defendant's claims of prejudicial joinder in a couple of ways. *State v. Coley,* 93 Ohio St. 3d 253, 259, 754 N.E.2d 1129, 2001 Ohio 1340. The state could show the evidence regarding one of the joined offenses would be admissible in trial of the other offense due to the exceptions to other acts evidence contained in Ohio Evid. R. 404(B). *Id.* at 259-260. The state can negate prejudicial joinder merely by showing that evidence of each crime (or as here each set of crimes) is simple and direct. *Id.* The Ohio Court of Appeals determined in relation to this claim:

> {¶ 127} "Simple and direct" has become an often-undefined catchphrase in judicial opinions. It stems from the concept that joinder of unrelated offenses is not prejudicial when the evidence as to each is not weak, is direct and uncomplicated, and can reasonably be separated as to each offense. See *State v. Torres,* 66 Ohio St.2d 340, 343-344 (1981), citing *U.S. v. Ragghianti,* 527 F.2d 586 (9th Cir.1975) and *U.S. v. Catena,* 500 F.2d 1319 (3d Cir.1974). In other words, the "simple and direct" test is satisfied when the evidence is sufficient to sustain each verdict, regardless of whether the charges were tried together, and when the jury will not be, or has not been, confused as to which evidence proves which act. *See id.*, citing *State v. Roberts,* 62 Ohio St.2d 170, 175 (1980); *see also State v. Coley*, 93 Ohio St.3d 253 (2001).

Petitioner argues this is nonharmless error because the error affected Petitioner's Sixth Amendment right to a fair trial and any error "affecting substantial rights" is always synonymous with "prejudicial." *See generally Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (constitutional error may not be found harmless if error deprives a defendant of the "basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as

fundamentally fair") (quoting *Rose v. Clark*, 478 U.S. 570, 577-578 (1986)). The court of appeals should correct a plain forfeited error affecting substantial rights *U.S. v. Atkinson*, 297 U.S. 157, 160 (1936); *See also U.S. v. Olano*, 507 U.S. 725 (1993). When prejudicial error occurs, the State must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24 (1967). The *Chapman* standard recognizes that "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the fact-finding process at trial." *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986). The mere fact the State admitted the facts were confusing was an admission of a prejudicial joinder. Therefore, the State Court's opinion is objectively unreasonable, given United States Supreme Court precedent because "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. U.S.,* 344 U.S. 604, 619 (1953); *see Hopt v. Utah,* 120 U.S. 430, 438 (1887) (quoting *Bruton v. U.S.,* 391 U.S. 123, 135 (1968)).

**III.    THE JURY RETURNED A VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE IS INSUFFICIENT TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.**

**ARGUMENT AND AUTHORITY**

Petitioner's federal claim is interwoven into the cases argued and cited by the Ohio Courts where Petitioner argued on Direct Appeal that his conviction was against the manifest weight of the evidence which means the reviewing court must determine whether the State has appropriately carried its burden of persuasion. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997) (COOK and LUNDBERG STRATTON, JJ., concur separately). Petitioner argues there was insufficient evidence and any conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 (1982) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979), whether the claim is against the manifest weight or insufficient evidence

the fact issue is the burden of persuasion. The claim of insufficient evidence invokes an inquiry about due process, and it raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia*, *supra*; *State v. Sorgee*, 54 Ohio St. 2d 464, 377 N.E.2d 782 (1978); *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

The Ohio Court of Appeals analyzed Petitioner's claim finding "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ct. App. 1983) (quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)).

{¶ 135} To convict Austin of the charged offenses, the state was required to prove the following elements beyond a reasonable doubt[1]:

Aggravated Murder: On or about June 12, 2017, Austin did purposely cause the death of Brandon, while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery. R.C. 2903.01(B).

Aggravated Robbery: On or about June 12 and June 20, 2017, in attempting or committing a theft offense as defined in R.C. 2913.01, or in fleeing immediately after the attempt or offense, Austin did have a deadly weapon on or about his person or under his control, and either displayed the weapon, brandished it, indicated he possessed it, or used it. R.C. 2911.01(A)(1).

Tampering with Evidence: Knowing that an official proceeding or investigation is in progress, or is about to be likely to be instituted, Austin did alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation. R.C. 2921.12(A)(1).

---

[1] The state court incorporated the reasonable doubt standard when addressing Petitioner's claims. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970)). The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. *See also* C. McCormick, Evidence § 321, pp. 681-682 (1954); *see also* 9 J. Wigmore, Evidence § 2497 (3d ed. 1940).

Having Weapons While Under Disability: On or about June 12 and 20, 2017, having not been relieved from disability under operation of law or legal process, Austin did knowingly acquire, have, carry, or use any firearm, when he had been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence, to-wit: aggravated burglary with a firearm specification. R.C. 2923.13(A)(2).

Firearm Specifications: At the time of committing aggravated murder and both Aggravated Robberies, Austin did have a firearm on or about his person or under his control and brandished the firearm, indicated that he possessed it, or used it to facilitate the offense. R.C. 2941.145.

Petitioner argued there was a lack of forensic evidence supporting his conviction for aggravated murder. Although there was no DNA or firearm evidence connecting Petitioner to the crime, there was inadmissible forensic evidence in the form of the HPLI cell tower data that is not accurate enough to base conclusory allegations with no corroborating evidence.

Petitioner argues the witness testimony was unforgivably inconsistent and contradictory and the court recognized that some witnesses' testimony was conflicting as to specific times and the details at issue but still determined that the information provided, and the general time frames established by the testimony provided a generally consistent timeline of events on the days in question. The court determined "a few of the teenage witnesses had initially lied to the police about what they knew…" The court stated, "the record does not reveal any incentive the witnesses may have had to provide testimony against [Petitioner's] interests, perhaps except for fellow inmate Timothy Cook." Petitioner argues the witnesses' incentive was to protect the real killer.

IV.     **TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS FOR FAILING TO INVESTIGATE AND/OR THE EVIDENCE WAS UNAVAILABLE.**

## FACTS SUPPORTING RELIEF

Petitioner presented "new evidence," in post-conviction proceedings, in the form of sworn affidavits from several material witnesses. The Supreme Court of Ohio affirmed the denial of relief with two judges dissenting. *See State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245, (Donnelly, J., dissents, with an opinion joined by Brunner, J). The dissent recognized:

> {¶ 5} To support his claims of ineffective assistance of trial counsel and other constitutional deprivations, appellant, Austin Burke, submitted the affidavits of six other people, none of whom appear to have testified at Burke's trial. *Id.* at ¶ 23-34. Among the many factual issues raised in those affidavits is whether a different person had confessed to committing the primary offense for which Burke was tried and convicted: the aggravated murder of Brandon Sample. *Id.* at ¶ 2, 23. The trial court was apparently curious about the veracity of the affiant who had made that assertion, but rather than ordering a statutorily required hearing to test the veracity of the facts alleged, the court conducted an in-camera review of the juvenile-detention records relating to that alternative suspect, *Id.* at ¶ 9. The court did not allow the state or the defense to review those materials, despite their being central to the court's finding that the affiant's claim was not true. *Id.* at ¶ 35. The trial court similarly rejected every other affidavit as "problematic" and summarily denied Burke's petition for post-conviction relief without first holding an evidentiary hearing.

> {¶ 6} One of the worst injustices that we judges can perpetuate is to let an innocent person remain in prison. Although it is disturbing to think that a wrongful conviction might have happened on our watch, we cannot and should not be so quick to deny that possibility. Post-conviction proceedings are an important safeguard against wrongful convictions, and we need to ensure that petitioners are afforded a meaningful opportunity to attempt to prove cogent claims at evidentiary hearings. If a petitioner's claims appear to be true and an innocent person might be in prison, we need to set aside our dogged commitment to finality and make room to correct that injustice. The standards currently employed by Ohio's courts do not make such room.

The State Trial Court did not hold an evidentiary hearing which was noted by the dissent, however, because the evidence was before the State Court it can be considered in an evidentiary hearing before this court. 28 U.S.C. § 2254 (e)

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence or; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner argues first, the determination of the factual issues with the newly discovered or newly presented evidence could not have been on the merit. The State Court determination cannot be presumed to be correct because nothing alleged to have been considered by the District Court is part of the record except the Affidavits presented by Petitioner. The critical point that must consider is if the State Court decided Petitioner's case on the merits because (1) AEDPA's highly deferential standard of review is triggered but since the State Court determination was made on some external factor that does not appear in the record, it cannot be presumed to be on the merit. Petitioner argues when a decision is not based on the merits *de novo* review applies. *Stermer v. Warren,* 959 F.3d 704, 719 (6th Cir. 2020)[2]. Factual findings based solely on the State Court record is subject to *de novo* review. *Stermer v. Warren*, 959 F.3d at, 720; *Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001).

Section 2254(d) is a congressional mandate as to an abuse of discretion and when assessing whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), the reviewing court "is

---

[2] The undersigned on briefs for Ms. Stermer.

limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Because of this, a District Court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d). *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012). However, if a review of the State Court record shows that additional fact-finding was required under clearly established federal law or that the State Court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the Federal Court can review the underlying claim on its merits. *See, e.g., Brumfield v. Cain,* 576 U.S. 305 (2015); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007); *Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012). *see also, e.g., Pinholster,* 563 U.S. at 205, 131 S.Ct. 1388 (Breyer, J., concurring in part and dissenting in part) ("For example, if the state court rejection assumed the habeas petitioner's facts (deciding that, even if those facts were true, federal law was not violated), then (after finding the state court wrong on a [§ 2254](d) ground) [a federal habeas] hearing might be needed to determine whether the facts alleged were indeed true."); *cf., e.g.*, *Hurles v. Ryan,* 752 F.3d 768, 790-91 (9th Cir. 2014) ("[W]here a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference" (quoting *Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir. 2004), *abrogated on other grounds* by *Pinholster*, 563 U.S. 170)); *Robinson v. Howes*, 663 F.3d 819, 823 n.2 (6th Cir. 2011) (noting that a decision would not be "on the merits" if the issue were decided without the key records establishing the basis for the claim).

Petitioner argues the facts from the Affidavits of Cassandra Boyles (Boyles) who stated that Preston Whitacre confessed to her he was the shooter, but that [Petitioner] was going down

for the murder. Boyles also stated that Ricky Roupe and Whitacre assaulted Decedent before the shooting, and they videoed the murder on Preston's cellphone. *See* [Affidavit[3]]

In the Affidavit of Donna Cottrill, she stated that her sister, Denise White, was dating a robbery witness, Shawn Marx. She says that Shawn was high on crystal meth during the robbery and during his testimony at the trial. She admitted in her Affidavit that Shawn had a long criminal history and is incarcerated involving drugs and crystal meth.

In the Affidavit of Lisa Cope, she stated that her former friend, Mary Roupe, the daughter of Pamela Roupe, whose house the murder took place, reported to Lisa (the day of disappearance), that Ricky Roupe, Preston Whitacre, and Joshua White, beat up a kid at Pamela Roupe's house, and that they killed the kid. There were two other female cousins of the Roupes who were present at the house on the date of the incident. They buried a cellphone with video of the murder at Mosquito Lake campground. They said they took the kid for a ride. Asked about how to clean up blood? From the evidence, we know Ricky Roupe is pictured with an injury to his right hand/wrist on June 16, 2017 (four days after disappearance), in a recorded video interview with detectives regarding Decedent's body being found. Ricky Roupe was not questioned about injury and post-conviction counsel attached photos of the injury with the Application in the State Trial Court. Also, another reason that the Trial Court's determination cannot be considered on the merit is because it also make an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d)(2).

In the Affidavit 1 of Gage Sell, he stated that Petitioner was dropped off by a white, Chevy Malibu just before dark on June 11, 2017. Gage stated that he saw Petitioner at home before he went to bed, and early in the morning when he woke up. The cell phone location evidence established Petitioner's whereabouts.

---

[3] All affidavits referenced herein appeared in the state court record.

In Affidavit 1 of Jamie Sell, she stated, she paid for a phone search of the last phone calls Decedent made on his cell at 0214 and 0215 on June 12, 2017. Those phone calls were to Joe Leamon who was Brandon's heroin dealer. Detective Greaver stated to Taylor Dunn (Brandon's girlfriend) during an interview that Brandon did not contact Joe Leamon that day. Brandon called this number at least 6 times daily. Detectives admitted in trial these calls were not investigated, and the owner of the phone number was unknown, but the detective's statement (in discovery), mentions looking for Joe Leamon at an Aris Street address which indicates he was being sought for questioning. Jamie Sell collected phone records and court dockets for Joe Leamon were included with the Application for Post-Conviction Relief.

In the Affidavit of Lori M. White, she stated that Joshua White testified that he never used drugs and Decedent never used heroin. She admitted that it is a known fact (by Brandon's family) that Brandon and Joshua White were addicts, and Joshua has since been arrested for assault and court ordered to a rehab.

In Affidavit 2 of Jamie Sell, she stated, there were 19 text messages on Petitioner's phone from/to Decedent not turned over with discovery by the Prosecutor. These messages prove that Decedent was an active heroin user meeting up with his drug dealer at or a little after 2:00 a.m. on East side of Warren, and corroborated Petitioner's statements to police. Decedent's phone records were not from Verizon, they came from his father's home computer and pasted in an Excel document. The text messages discussed in the Affidavit are corroborated by the record and the additional text messages were included in post-conviction proceedings.

In Affidavit 3 of Jamie Sell, she stated, that the video of Pizza Joe's robbery was grainy and of poor resolution. The Cortland police officer testified that Petitioner's shoes were absolutely the shoes the robber was wearing. When Petitioner was booked into jail, he was

missing a shoestring which had been in the jail's possession and was never considered evidence. The shoestring was tied in a knot around Petitioner's khaki cargo shorts, as a belt; at the time of arrest. Petitioner's shoes were recovered by a bed, in the apartment, among other various shoes, missing a gray shoestring.

In Affidavit 4 of Jamie Sell, she stated, that robbery witness, Donavon Bunner, stated in messages to Jamie he knew Petitioner was not the robber. In those text messages, he also stated he told Prosecutors that witness Melanie Engle lied during her testimony[4]. Further, the two Pizza Joes' employee witnesses described the robber as mixed race, with green eyes. Petitioner is white, with brown eyes. However, Donavon Bunner is mixed race, skinny, and 6 ft tall. The fingerprints on the gun were of an unknown third party. Donavon was a juvenile at the time, not fingerprinted, and since turning 18 years old last year, has been implicated in thefts, and charged with robbery and burglary. Also, witness Leah Smith, has messages extracted from Petitioner's cellphone that established Petitioner was picked up before the day he was arrested (by the group at the apartment, to go swimming both days), and had been there prior to the day of his arrest. This contradicts testimony that witnesses met Petitioner that day and corroborates Petitioner stating he wore the cargo shorts to go swimming the prior day (with the missing shoestring utilized as a belt). Petitioner included those Facebook messages with the Application which also indicates the State Trial Court did not address the post-conviction claims on the merit.

In Affidavit 5 of Jamie Sell, she stated, that Joshua White testified in trial and during interviews with police, that he and Decedent did not pick Petitioner up from Willow Lake, and that he had never met, or talked to him ever before. Joshua White actually knew Petitioner and texted him that night after meeting him, and Joshua White had sent Petitioner a picture of a 9mm gun, asking him if he wanted to purchase it. Petitioner declined.

---

[4] Prosecutorial misconduct is further discussed below.

Petitioner's phone extraction evidence did not include a log of his phone calls, or text messages as part of discovery. However, a photo of a 9mm gun was included in discovery and was extracted from Petitioner's cell phone's picture gallery. It was downloaded from a text Joshua White sent him. Joshua White and Decedent's phone records were never subpoenaed due to the ineffective assistance of counsel for failing to raise issues of discovery violations. Petitioner included the picture that came from discovery.

Further, in Affidavit 6 of Jamie Sell, she stated, there was never any bullet evidence found at the location of the body, despite a thorough search by metal detectors. This is corroborated by the record.

## THE ACTUAL INNOCENCE GATEWAY PROVIDES EXCEPTIONS TO PROCEDURAL BARS.

"[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (quoting *McCleskey v. Zant*, 499 U.S. 467, 502 (1991)). When used to overcome procedural issues, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. The Supreme Court has "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice." *Schlup v. Delo,* 513 U.S. 298, 321 (1995). It has been applied to overcome various procedural defaults, including those stemming from successive petitions, "abusive" petitions, failure to develop facts in state court, and failure to observe state

24

procedural rules. *McQuiggin*, at 393. Most recently, in *McQuiggin, supra*, the court recognized it as an available equitable exception to AEDPA's time-bar for first petitions, holding that actual innocence "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House v. Bell,* 547 U.S. 518 (2006). "Prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House,* at 537-38 (quoting *Schlup*, at 327).

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, at 329.

Removing the double negative, a petitioner's burden at the gateway stage is to demonstrate "that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. As this formulation clarifies, "actual innocence" is a misnomer, because "the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence"—that is, a petitioner need not make "a case of conclusive exoneration." *House*, at 538, 553; *see also Schlup,* at 327 ("[T]he showing of 'more likely than not' imposes a lower burden of proof than the 'clear and convincing' standard."). Thus, a "petitioner's showing of innocence is not insufficient solely because the trial record contained sufficient evidence to support the jury's verdict." *Id.* at 331; see *House*, 547 U.S. at 553-54 (granting a gateway innocence claim despite acknowledging that "[s]ome aspects of the State's evidence.... still support an inference of guilt"); *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (noting

that the actual innocence standard "is less strict than the insufficient evidence standard") *See Fontenot v. Crow*, No. 19-7045 (10th Cir. July 13, 2021))

To be credible, a claim of actual innocence requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, at 324. In assessing the adequacy of a petitioner's showing, "the habeas court must consider 'all the evidence,' old and new, incriminating, and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" *House*, at 538 (quoting *Schlup*, at 327-28). The innocence inquiry "requires a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable doubt standard." *Id.* at 539 (quoting *Schlup*, at 328). As discussed, the *Schlup* standard does not demand conclusive proof of exoneration; rather, it involves a probabilistic determination that, given all the evidence—"old and new; admissible and inadmissible," *Case v. Hatch,* 731 F.3d 1015, 1036 (10th Cir. 2013) —"more likely than not any reasonable juror would have reasonable doubt," *House,* at 538. The Supreme Court has suggested that to show actual innocence, a petitioner must present new evidence that is consequential. *See Schlup,* at 324 (explaining the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). *See also Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) addressing the terms "successive petition" and "abuse of the writ" have distinct meanings. A "successive petition" raises grounds identical to those raised and rejected on the merits on a prior petition. *Sanders v. U.S.,* 373 U.S. 1, 15-17 (1963); *See also McCleskey v. Zant, supra,* discussing the abuse of the writ in exceptions to habeas petitions.

V.   **PROSECUTORIAL MISCONDUCT FOR FAILING TO CORRECT TESTIMONY IT WOULD HAVE REASON TO BELIEVE WAS FALSE.**

### ARGUMENT AND AUTHORITIES

In Affidavit 4 of Jamie Sell, she stated, that robbery witness, Donavon Bunner, stated in messages to Jamie he knew Petitioner was not the robber. In those text messages, he also stated he told prosecutors that witness Melanie Engle lied during her testimony. Nearly a half century ago, SCOTUS counseled prosecutors "to refrain from improper methods calculated to produce a wrongful conviction...." *Berger v. U.S.,* 295 U.S. 78, 88 (1935). The adversary system allows the prosecutor to "prosecute with earnestness and vigor." *Id*. Although, "while he may strike hard blows, he is not at liberty to strike foul ones." *Id.* A state court conviction based on prosecutorial misconduct must focus on due process violations. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). A prosecutor may not present false testimony and must correct testimony they know to be false. *See Giglio v. U.S.*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.'" *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Petitioner argues that he is entitled to a new trial because the false testimony "seriously affects the fairness, integrity or public reputation of judicial proceedings," *U.S. v. Atkinson*, supra; *U.S. v. Olano*, 507 U.S. 725, 736 (1993). These tactics employed by the State "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." *Brady v. Maryland*, 373 U.S 83, 88 (1963).

**VI.      PETITIONER   WAS   DEPRIVED   OF   HIS   RIGHT   TO
CONFRONT WITNESSES AS THE AFFIDAVITS SET FORTH
MATERIAL FACTS AND DEMONSTRATE A DENIAL OF
FUNDAMENTAL FAIRNESS.**

### ARGUMENT AND AUTHORITIES

Petitioner argues that from the facts asserted in the Affidavits, the Sixth Amendment
applies to the States under the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403
(1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be
confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). In
*Crawford,* the Court held the Confrontation Clause guarantees a defendant's right to confront
those "*who bear testimony*" against him. *Id.* Importantly, *Crawford* did not alter the
"understanding of the bedrock procedural elements essential to the fairness of a proceeding."
*Whorton v. Bockting*, 549 U.S. 406 (2007) (citing *Sawyer v. Smith*, 497 U.S. 227, 242 (1990));
*See also Idaho v. Wright*, 497 U.S. 805 (1990)

**VII.     TRIAL  COUNSEL  WAS  INEFFECTIVE  FOR  FAILING  TO
OBJECT TO JUROR MISCONDUCT.**

### FACTS SUPPORTING RELIEF

In Affidavit 2 of Gage Sell, he stated that Gage recognized Megan Vincent Smith the last
day of trial, she was Juror No. 10. She was my driving instructor, familiar with our family, and
came to my house several times. Gage and Smith discussed the case at length, and she lied
during voir dire. Trial Counsel was notified but did not raise an objection to the fact the juror
was dishonest. There is no way that the attorney's failure to object "might be considered sound
trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984)(quoting *Michel v. Louisiana*,
350  U.S.  91,  101  (1955))  Counsel's  failure  to  object  was  well  outside  the  "range  of
professionally competent assistance." *Strickland*, 466 U.S. at 690.

Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it. The problem may be compounded when a charge of bias arises from juror misconduct, and not simply from attempts of third parties to influence a juror. *See Smith v. Phillips*, 455 U.S. 209, 221-222 (1982) (JUSTICE O'CONNOR, concurring). Due process is denied by circumstances that create the likelihood or the appearance of bias. *Peters v. Kiff,* 407 U.S. 493, 502 (1972). Showing actual subjective bias is not required to establish a due process violation. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Petitioner argues that the error must be viewed as structural error. Structural error is a defect in the constitution of the trial mechanism, which defies analysis by "harmless-error standards." *Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995) An error cannot be both structural and subject to harmless-error review. *See Neder v U.S.*, 527 U.S. 1, 8 (1999). "[A]n error has been deemed structural if the error always results in fundamental unfairness." *Weaver v. Massachusetts*, 582 U.S.___, 137 S.Ct. 1899 (2017).

## IX.  CONCLUSION

WHEREFORE, the Petitioner respectfully prays this court will set this case for an evidentiary hearing or alternatively issue an Order Granting a Conditional Writ.

Respectfully submitted,


/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Petitioner

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 19th day of July, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the Ohio Attorney General's Office.

I certify that on this 19th day of July, 2022, I mailed a copy of the same to Petitioner who is not registered participants of the ECF System.

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON

## **VERIFICATION**

I, AUSTIN TAYLOR BURKE, #A743072, hereby declare under penalty of perjury that the foregoing Petition for Writ of Habeas Corpus is true and correct and verified by me and will be electronically filed by my attorney, Debra K. Hampton.

Executed on July 15, 2022.

AUSTIN TAYLOR BURKE, #A743072
Southern Ohio Correctional Facility
Lucasville, Ohio