IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| (1) AUSTIN TAYLOR BURKE, )<br>　　　　Petitioner, )<br> )<br>-vs- )<br> )<br>(1) ED SHELDON, WARDEN, )<br>　　　　Respondent. ) | Case No. 4:22-cv-1271 |

## BRIEFING ON TIMELINESS

COMES NOW, the Petitioner, AUSTIN TAYLOR BURKE, #A743072, through his attorney, Debra K. Hampton, and in support thereof, Petitioner states:

### ARGUMENT AND AUTHORITY

Petitioner maintains that this Petition should be construed as timely under 28 U.S.C. § 2244(d), the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner was sentenced on March 27, 2018. Petitioner timely appealed the judgment that was affirmed on May 20, 2019. While Petitioner's Direct Appeal was pending, he filed for collateral review in the State District Court on May 16, 2019. The AEDPA was tolled with the filing of that Application with 365 days remaining.

The AEDPA does not begin to run until after (90) days expiration in which to file a Petition for Writ of Certiorari in the United States Supreme Court. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009); *See also Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003). Because Petitioner sought collateral review while his Direct Appeal was pending his AEDPA was still tolled for 90 additional days for seeking certiorari from the United States Supreme Court following post-conviction litigation in State Court. *Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir. 2009).

1

Petitioner states that the Ohio Supreme Court rejected the appeal with (2) two judges dissenting on April 16, 2021, meaning that the AEDPA did not begin to run until July 16, 2021. Petitioner filed his Habeas Petition on July 19, 2022, (2 days after the expiration of the AEDPA). The undersigned counsel had applied for admission to this Court before the expiration of the AEDPA which should also be construed to toll the AEDPA as an equitable exception. Because the AEDPA's "statute of limitations defense ... is not 'jurisdictional,'" *Holland v. Florida*, 560 U.S. 631 (2010) (citing *Day v. McDonough*, 547 U.S. 198, 205, 213 (2006)) This Court has the authority to recognize equitable exceptions especially when the failure cannot be contributed to Petitioner.

A Petitioner may be entitled to equitable tolling of the statute of limitations if he demonstrates "(1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Petitioner argues that an extraordinary circumstance prevented timely filing because counsel had an Application for admission to this Court pending before the final date.

## ACTUAL INNOCENCE EXCEPTIONS TO PROCEDURAL BARS

Defendant argues that he is actually innocent of the charges against him as this provides an exception to the AEDPA's one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) [A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." *Id*, at 392. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (quoting *McCleskey v. Zant*, 499 U.S. 467, 502 (1991)).

The Supreme Court of Ohio affirmed the denial of relief with two judges dissenting. *See State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245, (Donnelly, J., dissents, with an opinion joined by Brunner, J). The dissent recognized:

> {¶ 5} To support his claims of ineffective assistance of trial counsel and other constitutional deprivations, appellant, Austin Burke, submitted the affidavits of six other people, none of whom appear to have testified at Burke's trial. *Id*. at ¶ 23-34. Among the many factual issues raised in those affidavits is whether a different person had confessed to committing the primary offense for which Burke was tried and convicted: the aggravated murder of Brandon Sample. *Id*. at ¶ 2, 23. The trial court was apparently curious about the veracity of the affiant who had made that assertion, but rather than ordering a statutorily required hearing to test the veracity of the facts alleged, the court conducted an in-camera review of the juvenile-detention records relating to that alternative suspect, *Id.* at ¶ 9. The court did not allow the state or the defense to review those materials, despite their being central to the court's finding that the affiant's claim was not true. *Id*. at ¶ 35. The trial court similarly rejected every other affidavit as "problematic" and summarily denied Burke's petition for post-conviction relief without first holding an evidentiary hearing.
>
> {¶ 6} One of the worst injustices that we judges can perpetuate is to let an innocent person remain in prison. Although it is disturbing to think that a wrongful conviction might have happened on our watch, we cannot and should not be so quick to deny that possibility. Post-conviction proceedings are an important safeguard against wrongful convictions, and we need to ensure that petitioners are afforded a meaningful opportunity to attempt to prove cogent claims at evidentiary hearings. If a petitioner's claims appear to be true and an innocent person might be in prison, we need to set aside our dogged commitment to finality and make room to correct that injustice. The standards currently employed by Ohio's courts do not make such room.

*McQuiggin* allowed a claim of actual innocence to circumvent the statute of limitations, it also allowed courts to consider the "timing of the petition" alleging actual innocence. *McQuiggin,* 569 U.S. at 399-400. The timing of Petitioner's claim to innocence falls on the right side of the divide as two judges recognize that Petitioner's claims present a colorable claim to actual innocence. "A claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional

3

claim considered on the merits." *Id*. The Supreme Court has "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice." *Schlup v. Delo,* 513 U.S. 298, 321 (1995). It has been applied to overcome various procedural defaults, including those stemming from successive petitions, "abusive" petitions, failure to develop facts in State Court, and failure to observe state procedural rules. *McQuiggin*, at 393. In *McQuiggin,* the Court recognized it as an available equitable exception to AEDPA's time-bar for first petitions, holding that actual innocence "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House v. Bell,* 547 U.S. 518 (2006). "Prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House,* at 537-38 (quoting *Schlup*, at 327).

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, at 329.

Removing the double negative, a petitioner's burden at the gateway stage is to demonstrate "that more likely than not any reasonable juror would have reasonable doubt." *House*, at 538. As this formulation clarifies, "actual innocence" is a misnomer, because "the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence"—that is, a petitioner need not make "a case of conclusive exoneration." *House,* at 538, 553; *see also Schlup,* at 327 ("[T]he showing of 'more likely than not' imposes a lower burden of proof than the 'clear and convincing' standard."). Thus, a "petitioner's showing of innocence is not insufficient solely because the trial

Case: 4:22-cv-01271-JGC Doc #: 7 Filed: 09/28/22 5 of 6. PageID #: 55

record contained sufficient evidence to support the jury's verdict." *Id.* at 331; see *House*, at 553-54 (granting a gateway innocence claim despite acknowledging that "[s]ome aspects of the State's evidence ... still support an inference of guilt"); *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (noting that the actual innocence standard "is less strict than the insufficient evidence standard") See *Fontenot v. Crow,* 4 F.4th 982 (10th Cir. 2021), *cert denied Crow v. Fontenot*, No. 21-970 (U.S. June 6, 2022).

To be credible, a claim of actual innocence requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, at 324. In assessing the adequacy of a petitioner's showing, "the habeas court must consider 'all the evidence,' old and new, incriminating, and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" *House*, at 538 (quoting *Schlup*, at 327-28). The innocence inquiry "requires a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable doubt standard." *Id.* at 539 (quoting *Schlup*, at 328). As discussed, the *Schlup* standard does not demand conclusive proof of exoneration; rather, it involves a probabilistic determination that, given all the evidence—"old and new; admissible and inadmissible," *Case v. Hatch,* 731 F.3d 1015, 1036 (10th Cir. 2013) —"more likely than not any reasonable juror would have reasonable doubt," *House,* at 538. The Supreme Court has suggested that to show actual innocence, a petitioner must present new evidence that is consequential. *See Schlup,* at 324 (explaining the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

5

## CONCLUSION

WHEREFORE, the Petitioner respectfully prays this court will find Petitioner is entitled to equitable tolling. This motion is timely pursuant to Doc. # 5, PageID #: 46.

Respectfully submitted,

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I certify that on this 28th day of September 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the Ohio Attorney General's Office.

I certify that on this 28th day of September 2022, I mailed a copy of the same to Petitioner who is not registered participants of the ECF System.

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON
